Good afternoon, Chief Judge Kuczynski and members of this panel. May it please the Court. My name is Laura Franz and I represent Pier 1 Imports in this case. This case involves constitutional issues concerning the lawful limits of standing in the context of litigation under the Public Accommodations Title 3 of the Americans with Disabilities Act. It's not about standing to get inside the courthouse. Clearly, Plaintiff Appellee Chapman had standing to litigate about the five discrete conditions he claimed to have encountered at Pier 1's Vacaville store at the time he filed his complaint. So after that, why is it standing at all? Why isn't it just a question of the scope of the injunction? Why is it a standing question after that, once he's in the door? It's a standing question because there's an issue concerning whether or not there was sufficient standing for the scope of relief that was issued by the district court in this case. I guess I'm asking whether scope of relief is a standing question. Yes. Under Supreme Court precedent, the Court has held that a remedy must be limited to the inadequacy that produced the injury in fact, and that's quoting Lewis v. Casey. This is because the discrete factual context within which the injury occurred or is threatened ensures the framing of relief no broader than required by the precise facts to which the Court's ruling applied. And the Court more recently applied this rationale in the Daimler Chrysler Corporation v. Kuno case in 2006 in order to limit the scope of relief in that case to the standing that the plaintiffs had, which was standing to assert municipal tax relief as opposed to state tax relief. To rule in your favor, would we have to overrule Duran? No, you do not have to overrule Duran to move in my favor, in Pier 1's favor, because Duran involved actual violations of law that the plaintiff was asserting in order to establish standing. Our case is different because the five conditions that Chapman asserts in order to get his foot inside the courthouse door were not violations of law. But he didn't know that at the time that he filed the complaint, did he? That's absolutely correct, Your Honor. So under Duran, if he believed that there were five architectural barriers that complied with the ADA, and he filed a complaint believing that, under Duran, he's got Article III standing, right? Yes. Based on that. So are you suggesting that because of either things that Pier 1 did later or that turned out upon investigation not to be ADA violations, that somehow what was once standing disappears? No. The standing doesn't disappear to allege or to litigate about the five conditions that plaintiff actually encountered or knew about. What we have here is expanded standing under a judicial doctrine of deterrence. But that's the Duran case that Judge Silverman asked you about before. Are you not saying that we would have to overrule Duran in order to satisfy your request? I don't think so because there is, as the panel below decided, there is a distinction in this case between this case and Duran. In Duran, the Court said that the conditions, I think there were nine conditions. Four of them, I believe, actually existed and were remedied. That isn't the fact here. So what you have is absolute standing to get inside the courthouse door in Duran, but you also have this issue of deterrence that is based upon the actual violations that existed. The Court found that those violations deterred the plaintiff from walking into the store and experiencing the other conditions in the store. So this is a special doctrine that allowed the consideration of other conditions that were unknown and unencountered. So, counsel, would we have to limit Duran's rule in your favor? Your Honor, we suggest that Duran be overruled or limited. However, it is possible to simply distinguish Duran on the facts. How would it be limited? How would we limit it? I think that Duran should be limited to be consistent with the scope of the holding in the Pickering v. Holiday Foods case. In that case, the deterrence doctrine was applied to known conditions. Now, that's consistent with the Feudal Act provisions under the statute. But here he's not relying on deterrence. He's saying, I went there and I encountered conditions that were discriminatory against me because they may not have made it impossible for me to deal with the place, but it made it more difficult. And if I go back, there are going to be more conditions that are going to go back, and there are other conditions that are similarly going to discriminate against me. It's not that they're going to deter me and I can get there and I can deal with the place, but it's inconvenient I'm being discriminated against. Now, what's wrong with that? Your Honor, the Duran case is specifically premised on the issue of deterrence. I understand that. Well, let's assume it to be true. So what? I mean, why isn't it also true that he is also allegedly ensuring a fact, namely, that this place is discriminating against him because it is not providing equal access? And there are many – and although he has encountered only some of those ways, and I understand that he didn't necessarily lose on the merits of them. Some of them may have been corrected. But he's saying, now I know that there are other things that are also going to discriminate against me, and I don't – I shouldn't have to deal with that. I'm going to go back, and I should be able to go back to a non-discriminatory place. Your Honor, the problem with that analysis, which is in fact the analysis that's being advocated by the Department of Justice here and I think is advocated in the Duran case, is that it's an overgeneralization of the injury. An overgeneralization of the injury at some point becomes constitutionally problematic. For example – Counsel, I don't actually understand why you're putting your argument in constitutional terms. It seems to me that most of the cases you cite are environmental cases where there's no standing to sue about a wilderness area on behalf of somebody who's never been there, never goes there, doesn't plan to go there. Here, if you use the environmental analogy, no question there would be constitutional standing. The issue, it seems to me, would be statutory. The action can only be instituted under the statute by the person aggrieved. And since this fellow went shopping, bought his patio umbrella, went to the bathroom, was able to get the toilet seat cover and the toilet paper, turned his wheelchair around and all that, it seems like the only question would be was he a person aggrieved because some of that was a little less convenient or was it not inconvenient enough to make him a person aggrieved? Why is it necessary to make it a constitutional question? Well, Your Honor, we really assert alternative arguments here. I mean, there certainly is an argument that the conditions that confronted the plaintiff did not cause an injury. I mean, he testifies that he was not deterred and that he was not injured. He was able to use the restroom. The five conditions that he alleged all had to do with using the men's restroom. So certainly there's just this basic issue of whether there was an injury at all. Just one thing. Didn't he say he couldn't use the sink because he couldn't reach it? I'm sorry? Didn't he say he couldn't use the sink because he couldn't reach it? Yes. He says that he had problems reaching the sink. He didn't have a problem. He did have a problem. Well, we're not contesting that the conditions that he alleged didn't give him enough standing to get inside the courthouse door. But in fact, the sink was not misplaced, and it's not sufficient for the expanded standing that is discussed under Duran. So the answer to Judge Kleinfeld's question is he was aggrieved. He was – there's an argument at the very least that he wasn't aggrieved. So you're conceding that he is a person aggrieved because the sink isn't up to ADA specs and it's too hard for a person in a wheelchair to get to? He was alleging that that was the case. And we believe that – Well, wait a minute. I don't care about allegations because it's summary judgment. I care about evidence cognizable under Rule 56C. And as I recall, he has a deposition by some fellow who says that the sink is not up to spec. Your Honor, there is no evidence whatsoever that the sink was not up to standard. There's no evidence that the sink isn't up to ADA spec? Absolutely none. Isn't it true? I mean, what we have here, it seems to me, and I'm trying to understand your argument just a little bit. It seems to me that we're in response to a summary judgment motion. In response to a summary judgment motion given Lou John, it seems to me that the plaintiff cannot rest on mere allegations but must set forth by affidavit or other evidence specific facts which for the purpose of the summary judgment will be taken as true. Now, as I understand the deposition, the plaintiff says there were no other violations encountered. There was no problem entering the store or shopping there. He was not deterred by these problems in determining whether to make any other visits. He was never deterred from using the men's restroom. I guess I'm still back to where Judge Kleinfeld was. Why is this a constitutional argument? It seems to me there's nothing he's alleging here that has met the summary judgment standard. I think that's right, Your Honor. Under both Lou John and Lewis v. Casey and a number of other cases, clearly there is a higher standard at summary judgment and certainly at final judgment to actually support your standing argument. Well, and not only that, but when we go to the district judge who then had to rule on those issues that he suggested were standing, the only ones that were in the complaint the judge found either didn't contest them or they weren't violations. Isn't that correct? That is correct, Your Honor. And it's also my understanding that the list of violations that were appended to the complaint that the plaintiff said, I don't know what they are, I didn't see them, I didn't write them down, I didn't make them up, I had no part in preparing those violations. Isn't that also true? That is true. So the bottom line is, then, if we meet a summary judgment standard, it seems to me there's no evidence to sustain where he wants to go. Isn't that correct? That's true. Concerning the conditions that got him in the courthouse door, that is absolutely true. And that is one of our arguments. The conditions that got him in the courthouse door are only applicable for alleging something in a complaint to get in the courthouse door, says Lujan. After that, we go to summary judgment. You cannot rely on allegations in the complaint anymore. You've got to rely on something that's in an affidavit, attested to. That is correct. What the district court said here was that even though none of the conditions that got him in the courthouse door turned out to be actual factual violations of the law, that he somehow still had standing to allege unencountered, unknown conditions, and that supported the injunctive relief that was issued here. Counsel, we reviewed de novo, so it really doesn't matter what the district court said. And it's summary judgment, not 12b-6, so it really doesn't matter what's alleged in the complaint. What is the cognizable evidence under Rule 56 that there were and that there were not violations of the act such that he would be aggrieved by those violations? Now, that has two halves. First of all, was the act violated? And second, was he aggrieved? Since he's not blind, he wouldn't – even if the act requires Braille, he wouldn't be aggrieved by the lack of Braille. There is no summary judgment evidence whatsoever with regard to the conditions that got him in the door. Could you – For my question, don't say got him in the door. That's a metaphor. Okay. And it really isn't responsive to my exact concern. I assume when you use that metaphor, you're talking about 12b-6. And we're not talking about a 12b-6 at this stage of the litigation. Okay. I'm not sure that I understand the question. Okay. Are you saying that the evidence that's concerning the issues – Do you want to know what the evidence is that there was a violation of the act and that he was aggrieved by it, and what the evidence was that there either was not a violation of the act or that he was not aggrieved by whatever violation it was? Okay. Well, first of all, the plaintiff did not move for summary judgment on the five conditions that plaintiff encountered. There was no evidence to support those. We reviewed the no vote. Tell us what the evidence is on your side. There is no evidence. There is a genuine issue of fact, at least, on the things that he prevailed on. The only issue that is discussed in the district court opinion at all, and the only evidence that was presented – You understand the district judge cannot make findings at summary judgment. Right. No such thing as a finding of fact on summary judgment. At most, just a finding that there's no genuine issue of fact. There were no – there was no evidence whatsoever concerning the five encountered conditions. There was – That's the only question Judge Constance is asking you. Right. What evidence did you present in opposition or in support of your motion for summary judgment? There was – What did you present? There was a presentation from – What did you present? From the expert blacksmith affidavit was presented. And what evidence did he present? He presented evidence that, for example, the sink was in the correct spot, that the aisle was only temporarily blocked for stocking, that the toilet seat cover dispenser was in the correct location, that the black back grab bar was in the correct location. And what did – what did Chapman present? Chapman presented no evidence concerning any of these. The card report. The card report dealt with other issues that were not encountered. Well, Judge Merkel's question was, what evidence was there of violations of the ADA? The card report – That's true. I know you didn't want the district court to consider them, but he overruled your objection. He considered all of them, and those were the violations. And Judge Kleinfeld is not just asking about the violations alleged in the complaint. He's saying what was the basis on which the district court ruled. Right. And the card report contains the violations, right? I apologize. Yes or no? I was trying to get to that. It was like a two-part answer. Am I correct? You are correct. Now, suppose that the complaint had said the following. And I understand you have a pleading problem that you also separately raised, but let's put that aside for now. Suppose the complaint had said this store has all of the following problems, the ones that are in the card report. Because it has all those – and I am planning to go to that store tomorrow because I want to buy a patio umbrella. And if I go to that store, I'm going to encounter a discriminatory place because it's going to have all these problems and those make it inaccessible as a matter of law for me, given my disability. Would that be a complaint that could go forward? I haven't been there yet, and I'm not saying I know about them. I'm saying that I've been told that it has all these problems. I haven't seen them, but I've been told they have all these problems. Well, I don't think that that would be sufficient because it wouldn't be a reasonable basis for deterrence. For example, under laid law – Why does it have to be deterrence? I am going. I am going. I'm not going to be deterred. I'm going to take whatever difficulties there are. I'm going. But it's going to be difficult. I'm going to have – I'm told I'm going to run into some problems. All right? I would question whether that is a reasonable basis for believing that harm is imminent. What we had here were the plaintiff knew of certain conditions that turn out not to be violations. Does that give rise to an uncertainty concerning whether or not the store is compliant? I'm not talking about uncertainty. I'm positing certainty. In other words, I'm trying to get – I understand there's a possible separate pleading issue. But if everything in the card report were in the complaint and he said, I – and I'm going tomorrow and there are all these problems and they affect my disability, would that be enough? Why not? That would be similar, if it's specific enough, to the Pickering case, which we're not – we don't allege any problem with. But that's a deterrence case. You keep getting hung up on deterrence. Right. I'm saying I'm not deterred. I'm going. But it's going to be a counter to these problems. Well, those are known violations at that point. And under the feudal gesture doctrine, you don't have to actually confront the violations. I do think, though, that if you're going to allege deterrence, you have to show that deterrence exists. But he hasn't alleged deterrence. He said, I went and I'm going. He's never alleged deterrence. So let's just – deterrence isn't relevant to this case. To your – to your question, if those are known violations, I believe he can litigate concerning those known violations. Well, they're now known because they were in the card report. So the only thing that's wrong with them is they weren't in the complaint. Well, standing is based upon what the facts are at the time the case commences. So in this particular case, you have to look back at when the original complaint was filed. And there were – there was no amended complaint ever in this case, so that doesn't raise the issue. Suppose we just re-imagine to amend the complaint. Is that the only problem here? To – well, if you look at the cases, it appears that amending the complaint, especially at the late time here, would not have been sufficient. There's quite a bit of discussion in Lujan and Lewis v. Casey about looking back to the commencement of the action itself to find standing. Well, but I think Judge Berzon's question is pretty relevant. If, in fact, the card report were appended to the complaint, and if, in fact, then they were reasonably known to the plaintiff, at that particular point in time, isn't the only thing that you can respond to her question is that you had also a report from another expert which would put into issue whether the card report was correct or not. Because if, in fact, those were reasonable complaints upon which he had reason to know about it, then at that point, doesn't it meet the statute and then also the deterrence? Because at that point, you've got to come up with some evidence to go against that, haven't you? As I understand the question, I think that's fair. As long as the plaintiff knows about the issues. Where we depart company and where the Pickering v. Holliday quality foods and Duran cases diverge is whether that presents standing to litigate about unknown, unencountered conditions. So to the extent that we're talking about known conditions, we're not suggesting that there would not be standing assuming that those conditions were something that conceivably would cause the plaintiff injury. But at what point, at what point? Let's just say that you have this situation, but say that the expert goes in a year later, going on, the case is being litigated, he goes in a year later, but the complaint is amended to reflect the things that are found at that point. Is there standing to seek redress with respect to the items that were discovered one year later? Your Honor, that's not the facts in this case, and I don't know what the answer to that is. Well, how long afterwards did the card make his report? It was a year and a half into the case and literally on the eve of close of discovery. Okay. So that really is almost exactly what I'm talking about then. So a year and a half later, at the time that Mr. Chapman filed his lawsuit, none of these things were known to him. He had not experienced any of them. A year and a half later, Mr. Card goes out, does his expert report. If the complaint had been amended to include each of those things, would the peer one have a problem either based upon standing or upon notice? Clearly, based on notice and rule 8 issues, there would be an issue there, absolutely. And discovery would probably have to reopen. What about standing? You'd have to extend the expert report deadlines. What about standing? On standing, Your Honor, I actually really closely reviewed the Supreme Court cases on this issue, and there is some reason to suspect that you actually do have to measure standing at the commencement of the lawsuit, not just at an amended complaint. So an amended complaint would — in most lawsuits, you know, people file lawsuits about any number of things, and then based upon what they find in discovery, they amend the complaint. It relates back. Why isn't that true in an ADA content? The only case that I could find where there was an amendment back issue as a result of an amended complaint was where a plaintiff was actually being added to the litigation. I really do not know what the proper answer to that question ought to be. Well, what difference does it make? Why would it matter if it related back? If he's still alleging that I'm still going to go to the store tomorrow, or I'm going to go — I go to the store regularly, I intend to go back, what difference does it make if it relates back? The injury is that he is being threatened with a discriminatory location. Right. I understand the inquiry. It's just beyond the facts of this case, and we have not — Only in that he didn't actually amend the complaint. He did not amend the complaint. Right. But that's a different question, isn't it? Whether it's technically a pleading problem. I mean, you had the notice. You knew about the card stuff. He, at that point, knew about the card stuff. So we only have a technical problem of whether the complaint was amended. That's the only problem. Well, there was no notice because the — the — Pier 1 could not respond with an expert report. The deadline for filing expert reports had passed. So that was a real issue in this case. Did you ask for an extension? Did you ask for an extension of time? Yes, I would like to reserve time for that. No, I'm sorry. I'm sorry. Did you ask for an extension of time? I thought I saw someone here. Oh, absolutely. There was not only — Didn't the district court say you had ample time? No, Your Honor. There was not only a request for an extension. There was a Rule 56 motion to, you know, to protest the consideration of this evidence. It is fully — Didn't the district court judge say that when denying your Rule 56-F motion, say that you had ample time to know about the other violations of the ADA? I don't recall that. But if he said it, it's not factually correct. It's the district court judge's finding. What are we supposed to do with it? Well, the record's pretty clear that these issues were raised — None of the abuse of discretion, right? Can we review the Rule 56-F motion for abuse of discretion? Yes. But the record is clear that these issues were raised, almost all of them, for the first time. So your expert did not respond to the card report on the same allegations? You don't — There was a cross-filing of expert reports. There was — since these were new issues, there was no opportunity for our expert to respond. So the cross — so, I mean, I thought one of your issues in filing this appeal was that the card report should not have been admitted and relied upon because there was conflicting evidence in the record to the report. Right. And that it was some of your expert's reports that conflicted with it. That's right. There is a multitude of claims that came in here. So, clearly, some of the issues were absolutely contested. But others were not. Here's what the district court actually said. Where is here plaintiff discovered new alleged violations during the discovery period that were not pled in the complaint but disclosed to defendant in sufficient time to permit defendant to address them in discovery and by way of law in motion, the court concludes plaintiff is not precluded from raising these allegations on a motion for summary judgment or a trial. And he — and then he goes on to say not — that's not to say that it would have been better had they amended the complaint, but how they handled it was not incorrect as an Arab law. That's what the district court said. This — some of that is vastly incorrect, but, Your Honor, it's also inconsistent with the Pickering v. Pier 1 case, which established that there would be a Rule 8 violation to consider issues for the first time on summary judgment where they had not been identified previously. But my basic point has been that whatever this is, it's not a standing problem, is it? Well, there is absolutely a separate Rule 8 notice issue in this case. But what I'm saying is that that's all there is. It seems to me that's all there is. There is an issue about — about pleading and pleading rules. But that seems to me to be all there is in terms of — I don't see where the standing issue is anymore. Well, the standing issue goes to the — the standing for the full scope of the relief that was — that was entered here. There was — there's no showing, for example, that the plaintiff either encountered or knew about a counter that was one-quarter inch too high or that he was injured by it. And there's no basis for an injunctive order that deals with that particular violation. There's no reason to believe, based upon the conditions that the plaintiff encountered, that he would be harmed by a counter that was one-quarter inch too high. You have about half a minute left. We'll round it up to a full minute and leave it for your rebuttal. Okay. Thank you, Your Honor. Mr. Hubbard, you are sharing time with Mr. Bagastos. Who's going to go first? Your Honor, I'm going to go first. Scott Hubbard, or the petitioner and plaintiff, Byron Chapman. I know that the Court's read the briefs and is familiar with the issues, and the Department of Justice would like to speak. So unless there are any questions for me — I do have a question. I thought there would be. I have a question right off the top. The card report contains nine references to the problems with the women's bathroom. How does your client have standing to allege that he suffered injury because of alleged problems in the women's bathroom? Does he have an unusual problem he hasn't disclosed in the complaint? There's actually a two-pronged answer to that. The first one is that, well, constitutionally, if you just look to the straight constitutional and statutory construction, you see that with respect to commercial facilities, not just public accommodations, but commercial facilities, which are at issue with Pier 1 in this case, a newly constructed facility, injunctive relief is not limited to places where the public, even the male public, are invited. It's limited to the entire facility. Now, that's straight from the statute. Now, neither side briefed this issue. But when you look to the definition of commercial facilities, there's two main requirements. A, it's going to affect commerce. And B, it's going to not be used for residential use. Now, there are a few exceptions regarding the male public. So if I'm understanding you correctly, you're saying that because the statute provides for injunctive relief as opposed to personal pecuniary damages, that he doesn't have to have Lujan-type experiences with respect to the women's bathroom. Is that what you're saying? I'm saying that from a purely constitutional and statutory construction of 303A claims, which is what we're dealing with, he would have standing. Now, in our complaint, we didn't, or excuse me, in this particular lawsuit, even though CARD identified those barriers, we did not, or at least I don't think we did, seek the removal of them. And even if we did, there might arguably be some prudential standing concerns. I guess what I'm concerned about is, of course, with Pickard and Duran, we have some gloss that our circuit has put on this, which not only includes the encounter, but a deterrent. And both those cases refer to that. What you're saying seems to me requires us to, at the very least, not follow what we've said in those two cases in order to have a standing. Not necessarily. There is a distinction. And this was recognized in the Coast versus Long Resorts, which is also a Ninth Circuit case, 2001 from Nevada, which we cite. If you look at page 923, it talks about how even though there was a technical violation that didn't inhibit the disabled plaintiff, caused minimal inconvenience, blah, blah, blah, it was still a violation of the ADA and the type of violation that the statute was designed to remove. Now, that was a newly constructed facility like this one. So in the extent it has to have a deterrent effect, I'm not entirely certain that's the case. I think that the statute is written in Congress intended that it's the building of the facility that violates the ADA. In fact, didn't you say, and I'm sorry to come over the top of you, Judge Berzon, but in fact, didn't you say at oral argument before the three-judge panel that you didn't enter any facts of deterrence into this record because there was no need to enter any facts of deterrence into this record under the standard? I could have said that. I don't remember. And in fact, then, that's why when there isn't anything in the summary judgment about deterrence because your client said he was not deterred in any event, he had no other violations encountered, he was going back, no problem, that, in fact, we would have to overrule or we would have to look past Duran or even Pickern to help your client because those places certainly deal with deterrence, as my colleague Judge Smith suggested. Keeping in mind I didn't listen to the previous three-judge panel before coming, but I do remember because I was the trial counsel in Duran v. 7-11, and I think this is what I was saying, but I'd have to re-listen. In Duran v. 7-11, he wasn't deterred. He wasn't deterred at all. Well, he said he was deterred. The claimant in Duran said, and I don't know whether I want to go back, but if they fix the stuff, I would surely go back. But your client didn't say that here. He said, I'm going back. It doesn't matter whether it's fixed or not. And so that's when you said, well, it doesn't matter. We don't need any facts of deterrence because that was my question. The two-prong answer is factually with respect to Duran v. 7-11, he had gone 10 or 20 times, and this particular 7-11 was in Anaheim where he lived and next to Disneyland, and he apparently went every year. There is that aspect of he still went there. He didn't know when just because it was so far, but he did go to that general area every year. The second part with respect to this one, and forgive me, Judge Smith, I'm going to have to ask you to repeat your statement. All I was saying is my question was the guy in Duran said, I'm not sure I'm going to go back because there's problems in there, and I might incur them, and I'm not sure. And yet in this case, there was no deterrence. The guy was going back. He's gone back. He had no trouble. On that second point, there is no distinction in the statute. When I taught ADA Section 308A, there is no distinction in the statute between actual visits or incidents of deterrence. Incidents of deterrence and actual visits are basically one and the same. Let me ask you another question then. If, in fact, your client had gone to this place and he got there, he encountered barriers, but he never wanted to go back, he didn't want any part of it, would never have gone back, had nothing to do with the encounter of alleged problems, but he just didn't want to go back. Does he have standing then? No. So if he has no standing then, then differentiate between the case where he goes, he encounters, but it doesn't matter about the encounters. He still goes back because he wants to go regardless of whether he encounters anything or not. It doesn't seem to me there's any distinction. There actually is. In the former, constitutionally speaking, there has to be a threat of future injury. So a disabled person who says, I'm not going back, I'm never going back, forget these people, I had such a horrible experience, I don't want to have anything to do with them anymore, I don't even think I'd slow down if I saw them in the crosswalk. In that instance, there would be no Article III standing because there would be no threat of future injury. In the latter example, where someone says, yeah, I'm going to go back, I have no choice to go back, I love this place, or better yet, this is where I get my medication, this is where I get my dry cleaning, this is where I pick my kids up from private school, this is a number of places I don't have any choice. I've got to go back. That wasn't my question. I have no choice. The question was, I have choice, I don't care, I'm going back because it doesn't matter what there is there, I can go back and do what I need to do. At that point, having made the choice and having no deterrence, that's where Pickard and Duran come in, don't it? It's still the denial of full and equal enjoyment of a public accommodation or facility. If, for example, you had somebody, let's take somebody who had to get his medication somewhere, and he goes up to the counter and he can't reach the counter, so every time he goes there, he has to ask somebody standing next to him to hand something up because he can't reach the counter, but he goes back weakly because he has to get it. Isn't he being injured? Yes. How is he being injured? What is the injury, in fact, for your client here? The presence of an ADAG, well, here or in her example. I'm moving away from the drugstore because there you have a particular description of somebody who wants to do something and can't do it. In this case, we've got citation of a number of identified barriers. We don't have – I haven't found anything yet. I'm kind of lost in this because the case seems to be different than I'd understood it coming in. But I haven't found anything that says that your client is knowledgeable, aware, is barred, is likely barred in the future. I don't mean just deterred coming to the store. There's no indication that these barriers mean anything to him. So if that's the case, what's the actual injury? The injury – I hate to turn to a question of statute. It's just a question of statute established by counsel. What is his injury? Not what is a statutory violation, but what is his injury, in fact, that gives him Article III standing? Somebody else may be able to bring the claim because they're affected by it. But if he doesn't even know that it exists, what's his injury? Fair enough. The denial of full and equal enjoyment and use of a facility in the same manner as someone who is able-bodied. So how is he denying enjoyment if he doesn't even know it exists? Dealing with this facility in particular. There were factual findings by the district court that the aisles were too narrow. Counsel, there were not. There cannot be factual findings in summary judgment.  Forgive me, Judge Kline. You cannot rely on a fact-finding. Forgive me, Judge Kleinfeld, I messed up. What I'm confused about is not the standing issue. I would like you to assume, for purposes of discussing my question with me, that he has Article III standing. What I'm interested in is Section 2000A3A, the civil action for preventive relief can only be instituted by the person aggrieved. When I go through his deposition, what I find out is he went there to get a patio umbrella. He got it. He wanted to go to the bathroom. He went. And the only thing I saw, I'm looking through his deposition, there's one part that's confusing because when the defendant asks questions, Mr. Hubbard says, we withdrew our claim for it, and the witness says, yeah, it's not an issue, ma'am. So something's been withdrawn. I don't know what there is that aggrieved him. The only thing I saw was that he has to reach to get the toilet seat cover out of the toilet seat dispenser, and it hurts his bursitis. But the bursitis is not his disability. Lots and lots of us have bursitis. So when we reach, we get pain. But that's not his disability. His disability is his spinal injury that puts him in a wheelchair. It looks as though he got the toilet seat cover. That's on page 94. He was able to maneuver his wheelchair. He got around in the bathroom okay. He got the toilet paper okay. What is ñ where do I find in his deposition that some ADA violation prevented him from having the full and unencumbered use of the facility? Well, I suppose the question ñ Just give me a page in line. I'm not asking about the law now. Fair enough. I actually ñ I need to follow up a smudge with you, and I hope you'll forgive me, Judge Kleinfeld. When you talk about denial of full and equal enjoyment of use ñ You won't help me with a page in line? You want to talk about the law more? No, no. I just have to clarify. Unfortunately, I don't have his deposition memorized, so I'm not going to be able to give you a page in line. I'm sure you have it with stickies and highlighted. No, I don't. But that said, when you talk about the injury that he suffered, are you talking about an instance where the injury, the architectural barrier was so severe? I'm answering a question with a question, as always. I'm just ñ You won't ñ look, it looks to me like if the court ñ Like you have a fellow who did a building inspection and says there's all ñ there are various things. Actually, his report is kind of hard to understand because he doesn't write in complete sentences. He says, picture 15 exhibits, men's lavatory, clear floor space and fixtures. It's not a sentence. I don't know what it means. And then he says waste receptacle and required clear floor space for wheelchair occupants. I infer that he means that the wastebasket is in the middle of the floor and it shouldn't be. And that's the only thing I could see where I could ñ where he's saying something is a violation. But I don't know. I want to know what the violations are that impaired your fellow's access to the store. Is the impairment ñ and this ñ I really need to clarify this question before ñ clarify it before I can ask you a question. Do you consider his inability to use something, the absolutely inability to use something, the type of discrimination ñ That's not what I asked you. That's why I'm clarifying. I didn't ask you whether he's ñ whether something's absolutely impossible. I asked you if he was impaired in his full ñ in his use of the facility. No. There's not ñ there isn't a line where something has been so impaired that he could not use it. How was he agreed? What about when he says he couldn't use a thing? He used a broader definition of impaired. I'm sorry, Judge. You said there are two definitions, and you went with the one. Let's take a broader definition of impaired, whatever you thought that was. What's your answer then? Well, there's two definitions. The first is ñ Yes. Let's not talk about it. The second one ñ Let's say the second one. Is your answer different? The second one is where he encountered the ñ No, no. Not what is it. Is your answer different? I'm sorry. Whatever the second definition is, you have a different answer. If it's the same answer, it doesn't matter. Well, the first ñ now, forgive me, Your Honors. I'm getting ñ I'm getting lost. With respect to the first definition, there is the encounter of a barrier that hinders him or actually prohibits him from using a ñ I don't want to talk about what the definitions are. Okay. The other ñ You said there are two definitions, and you gave an answer under one definition. Correct. That's the first definition. Okay. Now, under the second definition, is that the same answer or different? No. That is simply encountering the architectural barrier. When you say encountering, I think what you mean is something like I'm over at the bank and I notice there's no Braille, but since I'm not blind, it doesn't affect my use of the bank. Now, I've encountered it because I was there and I saw there was no Braille, but I would like to know if there's some condition that adversely affected his use of the Pier 1 store. In the ñ and I think you're using the word encounter to mean like me going to the bank. Well, I have a suspicion. My father's trial counsel, and I think he's biting at the bit to come in here and answer the Court's questions. Well, look. There is this dialogue about the sink. I don't understand how that fits in. Come forward. Your Honors, I'd like to present my father, Lynn Hubbard, and ask the Court to remember that the Department of Justice would like to speak. We'll save your time, okay? How are you, Mr. Hubbard, Sr.? What my son apparently forgot is that this gentleman had to maneuver to get on and off the toilet. Mr. Hubbard, can I persuade you to move about six inches to your left? The microphone. Just so your mouth allows the microphone. Thank you. My client had to maneuver on and off the toilet. It was 19 inches from the wall, not the required 18 inches. That affected his use of the bathroom. That's what I was trying to tell my son. What about the aisles and the other stuff, the stuff in the store? The aisle is 27 1⁄4 inches. His wheelchair is 30. He couldn't go down the aisle. Did he go down that aisle? I don't know. Those are all things to deal with. At the time the complaint was filed, he knew about all those things. On the other hand, the card report, which I gather was completed a year and a half later, your client never experienced any of those things, did he? He experienced the problem with the water closet, and I don't know if he … But he didn't allege that in the complaint, though, did he? Not in the complaint. Okay, so I guess what I'm struggling with here, I mean, I realize this is a remedial statute, but we do have Article III. It's part of the Constitution. And the cases make it very clear that your client has to be personally affected in the way that the Supreme Court has determined and to some degree what our court has determined. And what I'm struggling with here is it seems like as long as the case is going on under the terms of this case, say it were five years, say it were a really, really busy docket, and five years later, say your client's dead, and there's an executor that comes in and Mr. Card says all these things occurred. None of them occurred to your client. Is that enough to meet standing here? Well, if the client's dead, I can't address that answer. I just know that he had problems getting on and off the toilet and the toilet that needs to go. Well, what about this piece in the deposition where he says that he was prevented from using the sink? Is the problem that that situation was not complained of? Or you don't seem to be mentioning it, but he says that there was no clear space between the toilet and the sink. Did that prevent him from using the toilet? No, ma'am. Did it prevent him from using the sink? Yes, ma'am, it did. Did he use the sink? No, ma'am, I did not. Why did he not use the sink? Because I couldn't get to the sink. Why isn't that a problem? Well, that is a problem because the trash container was in the way. Let me ask you a question, Mr. Hubbard, if I may. I'm going to assume you have standing to raise all these things, okay? Yes. So we'll assume you have standing. What I don't understand is what excuses you from amending the complaint to put in these new violations that were found by card that were not included in the original complaint. Given the timing, we just didn't do it. There was time to take charge of the deposition.  But you say if we take charge of a complaint, we take charge of it. If you take charge of it, you're making a charge. Well, then doesn't that cook your goose? Well, the district ‑‑ what was your answer to that? Well, my answer is the barriers were there, our client encountered some of them. Well, isn't your answer that the district court could treat the complaint as having been amended essentially? Yes. Right. But today you would say did the district court treat the complaint as having been amended? Yes. Where in the record is that? It's in court's order on summary judgment. Were you seeking both injunctive relief and damages? We were. Counsel, I couldn't find ‑‑ But the court didn't make any ruling on the damages. I couldn't find in the deposition where Chapman actually said, I had more trouble getting out of the toilet because it was further from the wall than it should have been. Where is it? I can't give you a page in line. I'd have to go back and read it. Maybe you can give us a ‑‑ I remember it. Maybe you can ‑‑ I don't think it's there. And that's why I'm giving you a chance in practice. Why don't you give us ‑‑ make a note and you can send us a letter with copy to counsel with the citation to that. I'll do that. Why don't we hear from the government since counsel came. Thank you. And we'll ‑‑ you can sit at counsel's table, Mr. Hubbard. I think you've earned the right. Thank you, Chief Justice Ginsburg. My name is Samuel Bagenstos, and I represent the United States. Can I just ask a question that's involved? Yeah. No one's talked about Dallel or Forteune in their Ninth Circuit decisions that deal with the nature of constitutional standing for purposes of getting injunctive relief as opposed to compensatory damages. And it seems to me that one of the problems with the Ninth Circuit panel ‑‑ three-judge panel decision is that it conflated those two standards, yet we've clearly set it forth in Dallel and Forteune. And I'm wondering where the confusion is coming from. And did the district court do the same thing? I mean, to me, the deterrent effect doctrine has nothing to do with this case. Right. I think that's right, Your Honor. I mean, I think it might help to kind of start by pulling back the first principles and then kind of talking about how the case law implements them, because I think this Court's decision in Duran, the 2008 decision on rehearing in Duran, really identifies the correct principles as a matter of law, although there's somewhat confusing language in it about deterrents. Duran has deterrent effect in it all over it, doesn't it? Well, I think ‑‑ I mean, that's what I say, that there's somewhat confusing language in it, because if you look at page 1042 of the Court's opinion in the 2008 Duran case, what the Court says at head note 13 is, however, it is not an essential prerequisite of an ADA plaintiff's standing that he prove that deterrence caused by previously encountered violations was the reason that a particular violation was not discovered and hence alleged in the complaint. And then on a footnote at the bottom of the page, on footnote 5, the Court says, once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage or otherwise interfere with his access to a place of public accommodation, he has standing. And so what the Court is saying in these two portions of the Duran opinion is that you don't need to have deterrence from returning. And that makes sense, because the way that Article III ‑‑ Well, but just a minute. Duran also said a disabled individual who is currently deterred from patronizing a public accommodation due to the defendant's failure to comply with the ADA has suffered actual injury. Absolutely. So they're talking about actual injury or actual and imminent injury. There's not one point in Duran where they haven't talked about deterrence. Well, I mean, except for the language that I just read, Your Honor, which says that it's not ‑‑ deterrence is not an essential element. Where is that? That's at page 1042 of 524F3rd. It's at head note 13. The basic Article III standing principle that Congress can create legal rights, the invasion of which is an injury that creates standing. But to me, the harder injury question here is whether ‑‑ not whether it has to be deterred, but if he goes to the store and either never encounters this problem or even if he ‑‑ or even if he encountered it, it really wouldn't bother him in any way. What about ‑‑ why is that an injury? Well, I think the injury is not that ‑‑ the injury is not that he has to somehow be unable to use a part of the store to be threatened. No, I'm assuming that. But let's assume that he can use it. And not only that, it doesn't really ‑‑ even though it's a half inch too small, it doesn't really bother him at all. Right. Well, the statute creates this set of rights that are made specific by the ADA accessibility guidelines, which are guidelines created by two government agencies, the Access Board and then the Department of Justice, in order to ensure equal, full and equal access to all of the pieces of a place of public accommodation. But counsel, whatever the statute says, Congress can't override the Constitution, can it? Certainly not. But Congress can't create rights. Okay, so if the Constitution provides that we've got to have standing. Counsel, you've got two problems. You've got standing and you've got person aggrieved. And ‑‑ Right, you do. And we're all nogging over it. I think you're using the word encountered to mean if a disabled person goes someplace and sees something, he's encountered it. But I have trouble seeing why that would give Article III standing and why he would be aggrieved by the violation. Judge Berzon gave the example of the code violation that doesn't affect him on account of his impairment at all, the quarter of an inch off on the sink. Well, I can imagine all sorts of them. I gave the one where the person who's not blind notices that there's no Braille. He's encountered it. He might even have some other disability, like being deaf, and he's encountered it. But nevertheless, it did not affect adversely his use of the facility. So he was not discriminated against in his use of the facility on account of the failure to comply with ADA. If I can give two answers to that. I mean, I think there are two points there that are very important, Your Honor. One is that we certainly don't rest any of our argument on the term encountered. We don't think encounter has anything to do with it. And we agree as well that the standing is under Article III. A Title III plaintiff has standing to challenge any barriers at a place of public accommodation he intends to visit that relate to his disability. Wait. Relate to is also kind of vague. Does it have to affect his use, either by deterring him from going there or making it more difficult to use the facility than it would if he didn't have his particular handicap? It has to affect his use in the following way. It has to deny him the right to the accessibility features that are designed for his disability. So, for example, the 18-inch versus 19-inch radius for the toilet, which sounds very picayune, right? It's only an inch difference. The reason why- Is it in the deposition, incidentally? It is one of the violations that the district court concluded- I don't care about this- It's in the card report. This card report, because that's just the building inspector doing a punch list. What I care about is standing, which the building inspector can't give Chapman. Chapman has to be in some way discriminated against, I think, in order to have standing and in order to be a person aggrieved. And I can't find where Chapman says the toilet was too far away and it was really hard getting off my wheelchair and onto the toilet. Right. But I don't – I mean, I guess the difference between us, Judge Kleinfeld, is I do not believe and the United States does not believe that that is a requirement for Chapman. So you're thinking- So are you- Then the Court found that he did not have the size, and then when somebody else went there with a tape measure, he discovered it was further away than it ought to be. I think it's enough- Chapman had no problem. And I don't know whether Judge Berzon wants to ask her question, but I think it's enough that at the toilet, that the toilet at this Pier 1 facility is 19 inches away from the closest wall rather than 18 inches where it makes it. So are you – this is my question. Are you essentially arguing that the statute gives him a right to a toilet that's 19 inches away? Right. And if he doesn't get it, then he's being aggrieved. Exactly. Exactly. Does that mean, Counsel, that the government's position that if Mr. Chapman comes to Pier 1 and say they don't have the ramp the right height, that he could simply say that ramp is not the right height, get back in his truck and go away, and five years later Mr. Card can come and do his inventory and he has standing to allege all of those things? All of the violations- Because they are related to- His disability. Disability. His disability, yes. And I think that's important. And you're also suggesting then that if he comes to the facility and doesn't want to go back ever, nothing to do with what he's encountered or what he hasn't encountered, but he just has no desire to go back, that he still has standing? No. No, absolutely not. Well, then there has to be something where he is affected. Isn't that true? He's affected because he intends to return to a facility that does not have the accessibility features Congress guaranteed for people with disabilities. And if he doesn't allege an effect, if he doesn't allege that he's somehow affected or deterred, or if his deposition suggests he is not, then how does he have standing? Well, a plaintiff could say, I use a wheelchair. There were two steps in front. I was able to get up without a ramp being there. Nonetheless, I think you should change the ramp. But that isn't what happened here. What happened here was he didn't say, I could get there. It was hard. He said, I've not been deterred at all. I don't have any problem going. I'm going back. I'm going back every time. There's nothing that's even affected me. I don't – I mean, I guess – I guess the difference is I don't think the statement here is that there's nothing that's even affected me. If a plaintiff says, look, the barrier is there. I got through it. No problem. There's still a statutory right to not have the barrier there because of issues of safety. But you are saying something a little more fine cut than that because you're essentially saying even if it doesn't – unlike the going up the steps thing. He's still entitled as a matter of statute to a certain structure designed to accommodate his disability. Maybe it will affect him next time. It's set up that way for a reason. It's meant to avoid problems that may be down the line. And he's entitled to it even if it doesn't bother him. Right. That's basically ultimately your position. Right. Even if it doesn't bother him besides violating the statute. I mean, if you take the 27 1⁄4 inch wide – That only violates the statute. But it creates standing because it is an injury. The injury being not getting what the statute promised you. Is that basically what you're saying? Right. The injury is you're not getting what the statute promises you. And that is a basic Article III principle the Supreme Court has articulated many times. Public Citizen v. United States is a good example of that. The cases involving Federal Election Commission v. Aiken, same example. The idea being, it's well established, Congress can create legal rights. If you're denied the right, then even if there's no further injury of a type that would be recognized in common law, that is an injury – the denial of the statutory right is an injury itself. And it has to be – And how does the ADA itself define discrimination? Isn't one of the parts of that definition the failure to remove architectural barriers that can be removed? Exactly. And in this context where we're talking about a newly constructed facility even more so, the failure to have a newly constructed facility that is fully accessible, that has no barriers, and the barriers are defined by the ADA accessibility guidelines and the regulations. So, yes, I mean, that's – and those rights being violated create standing under basic Article III principles. Thank you very much. Unless we want to decry the statute, ADA and constitutional, because of the way it defines those things. Well, I think – I don't think Congress – I don't think Congress exceeded any constitutional bounds in creating new rights any more than the Federal Advisory Commission Act. Thank you. Thank you. We've got a minute for rebuttal. I'd like to just quickly respond to a couple of questions. Judge Brezon asked about a sink that was allegedly out of place. No, it wasn't a sink that was out of place. He said he couldn't get to it because there was stuff in the way. He couldn't get to it. There was no evidence presented at summary judgment that that – that the – that that impacted the plaintiff in any way. There was. There was. He said he couldn't get to the sink. I thought what you were going to say was that it was fixed. Maybe it was. But he did say it impacted him. Yeah, I think we might be talking about two different things. There was another issue concerning a waste receptacle. But that wasn't raised by the plaintiff himself. That was never raised by the plaintiff himself. I read exactly what he said. He said I couldn't – there was stuff in the way and I couldn't get to the sink and I didn't use the sink. That's what he said. Now, I don't know what happened to that. Okay. I don't know whether it's because the next time they went there, it wasn't – it was fixed or – or it wasn't really part of the complaint or what. But there is some – that's the most specific injury that I could find in the complaint. Okay. In the deposition. Okay. I understand. I may have misunderstood the issue. There – there was no testimony presented by the plaintiff that the waste receptacle was in the way. That was something that came out of the card report. There may have been some general testimony in the deposition, but it wasn't presented as part of the summary – summary judgment evidence. Did you talk about the sink in the deposition? Maybe you could tell us the page and line number if you did. Page 102. 102, was it? 102. Two things on the sink. The sink issue was not presented in summary judgment. It was abandoned. And the sink issue was not part of the complaint. So it was one of the encountered issues that was complained about, but it was not in the complaint. In response to Judge Kleinfeld's question, we – it is not sufficient that a particular violation, alleged violation, pertain to the plaintiff's disability if the plaintiff was not impacted. For example, the plaintiff may be in a wheelchair, and clearly he has a general interest in whether there are disability parking spaces. But if he goes to the store and there are five instead of six and they're open, he has no impact. But what about, for example, in the – I think it's the long case about the hotel. The door was supposed to be a certain width. Suppose this particular person who's the plaintiff's wheelchair was a little narrower than the norm. So even if it were an inch smaller, he could have gotten in. So he has no problem, even though the prescription is a certain width. Yes. I think at some level, if he's getting through the aisle but he's scraping his knuckles, there's a problem. So it's not did he just get through, but did it impact him in some way. What if he's saying my normal wheelchair gets through, but, you know, one of these days it might be broken. I might have to use my spare wheelchair. I might have to borrow a wheelchair. I might have to rent a wheelchair. And at that point, I can't get through the door. What if that's what he's saying? So, you know, so long as my normal, narrow wheelchair is available, I'm okay. But I may not be okay in the future. Right. That's too many ifs, that there's no imminent injury. What so if about saying, look, I go to this hotel all the time. If I were to rent a wheelchair rather than use my own special made wheelchair that's got a narrow body, I can, you know, I couldn't get through the door and I really would like to stay at this hotel. And we're parsing words. At some level, there may be an issue of injury there. But the argument, as I understand it, is Congress gave him a right to a door of 36 inches. So he doesn't have to worry about this. And you're only, I mean, my hypothetical, they're only giving him a door of 35 inches. So he's not getting what Congress promised him. Why isn't that enough? There are plenty of cases that say this isn't a private attorney general statute. This is a statute where the plaintiff has to show he's actually aggrieved. I mean, if that is that they gave it to him for a reason, which is that a person with his disability at some point may need a 36 inches. Why isn't it good enough that he shouldn't have to worry about it? At some level, your point is well taken. If there are too many ifs or buts before you get to that level, then the person isn't aggrieved. This doesn't state what happened in this case, though. Counsel, in this case, why isn't it enough both for Article III standing and to make him a person aggrieved that he says when I was in that bathroom, I couldn't use the sink because it was too close to the toilet to get my wheelchair in there, and then as a person aggrieved to get an injunction curing the ADA violations that would affect a person with his sort of disability? Well, we've conceded that that the encountered conditions were sufficient to provide Article III jurisdiction with regard to those conditions. But those conditions weren't proved. And so to say that those same unproven, nonexistent conditions. Well, wait a minute. There's Rule 56, cognizable testimony on the sink. That issue was not presented in summary judgment. It was abandoned in summary judgment. Where's the abandonment of the sink? Well, it's a negative. I mean, it just was not the plaintiff did not move for summary judgment on that particular issue, did not respond to the plaintiff's movement on summary judgment on that particular issue. Thank you. Thank you, Your Honor. The case is now in the stand for a minute. We're adjourned.
judges: Kozinski, Schroeder, Kleinfeld, Silverman, Wardlaw, Paez, Berzon, Rawlinson, Clifton, M. Smith, N.R. Smith